IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| ALLEN FORD, Y24630, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 25-cv-1600-DWD |
| | ) | |
| ANTHONY WILLS, | ) | |
| SAMUEL STERRETT, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM AND ORDER

**DUGAN, District Judge:**

Plaintiff Allen Ford, an inmate of the Illinois Department of Corrections (IDOC) currently incarcerated at Menard Correctional Center, brings this action pursuant to 42 U.S.C. § 1983 for alleged deprivations of his constitutional rights at Menard Correctional Center (Menard).  This case began as a multi-plaintiff action (Case No. 24-cv-1462-DWD), but on August 15, 2025, the Court severed each plaintiff into his own matter because only one of the three wished to pursue emergency injunctive relief, and the exhaustion issues appeared to be different for each plaintiff.  The Defendants filed a Motion for Summary Judgment (Doc. 12), and Plaintiff responded (Doc. 16).  For reasons explained herein, Plaintiff may proceed on Claims 1 and 2, but he may not proceed on Claim 3 because it was not properly exhausted.

### BACKGROUND

This multi-plaintiff action was initiated with the filing of a joint complaint on June 6, 2024.  (Case No. 24-cv-1462, Doc. 1).  On August 13, 2024, Plaintiff Ford submitted his

signed copy of the joint complaint. (*Id.*, Doc. 33). In short, the plaintiffs alleged that Defendants Wills and Sterrett had not allowed adequate access to religious services because the three had been unable to regularly attend Taleem or Jumu'ah services between September of 2023 and July of 2024. One hinderance they identified was the fact that if Taleem was offered at the regularly scheduled time, that time coincided with their sole access to law library, meaning they would have been forced to choose between religion or law library time. Additionally, they alleged that other general population cell houses at Menard received more favorable religious offerings than the East cell house where they resided. They claimed that this differential treatment had no basis and violated their right to Equal Protection.

The Court allowed Plaintiffs to proceed on the following claims:

**Claim 1:** **First Amendment claim related to the denial of Jumu'ah and/or Taleem services against Defendants Sterrett and Wills in their individual capacities (or against Defendant Wills in his official capacity for any injunctive relief sought);**

**Claim 2:** **RLUIPA claim related to the denial of Jumu'ah and/or Taleem services against Defendant Wills in his official capacity;**

**Claim 3:** **Equal Protection claim related to the denial of Jumu'ah and/or Taleem services for inmates in the East cellhouse against Defendants Sterrett and Wills.**

(Doc. 5).

The parties undertook discovery on the exhaustion of administrative remedies, and in doing so they have identified a handful of grievances relevant to the claims in this case.

### FINDINGS OF FACT

On September 26, 2023, Plaintiff lodged grievance K4-1023-0544 concerning staff conduct and his religious exercise. He wrote, "[t]oday is 09-26-23 I've recently returned to general pop on 09-08-23 after doing 6 months of segregation. I have drop multiple request for law library and Jumah, Taleem Al-Islam services. I have been denied the right to attend law library and Al-Islam services. I have a pro se petition in courts. I'm a devoted Muslim I ask that this be look into immediately." In the demand for relief, Plaintiff indicated that as a devoted Muslim, the Al-Islam services are important for him to attend. (Doc. 12 at 36). The Warden denied the grievance emergency status on October 4, 2023. In response to the grievance, a counselor indicated that Plaintiff was not prioritized for law library because he did not have an impending legal deadline. Additionally, the counselor noted that law library had been cancelled due to lockdowns. (*Id.*). The counselor said nothing about Plaintiff's religious exercise.

On January 2, 2024, a grievance officer responded to the grievance and reported "[p]er Chaplain Sterrett, chapel lines have been canceled the safety and security of the institution, which primarily related to staffing shortages. Most individuals are not being permitted to attend chapel services. This is not narrowed down to specific individuals. Service will resume once the safety and security of the institution are not an issue." (Doc. 12 at 35. The Chief Administrative Officer concurred in the denial of the grievance on January 2, 2024. Plaintiff appealed on January 31, 2024 (Doc. 12 at 35), but the Administrative Review Board rejected the appeal as untimely because it was not received until February 5, 2024 (Doc. 12 at 34).

The Defendants also highlighted grievance K4-0424-1828, a grievance Plaintiff Ford lodged on April 10, 2024.  (Doc. 12 at 32).  In the grievance Plaintiff complained that for the past 30 days he had been confined to his cell without access to a wide variety of amenities and services, including religious services.  (*Id.* at 32-33).  Plaintiff appealed the grievance on July 2, 2024 (Doc. 12 at 31), and the Administrative Review Board reviewed it on August 26, 2024 (Doc. 12 at 37).

In addition to these two grievances, the Defendants also included grievance K4-0324-1560, which Plaintiff filed on March 24, 2024.  (Doc. 12 at 25).  In the grievance, Plaintiff alleged that from September 8, 2023, to the date of the grievance he had only been allowed to attend a single Al Islam service.  He alleged that Warden Wills and Chaplain Sterrett rarely run Taleem service, or they authorize it to be run at the exact same day and time as law library.  He further alleges that other activities have been conducted at reduced attendance levels, which could be done for Al Islam services, and other religions have alternative methods of religious observance like television channels. Finally, Plaintiff alleged that Wills and Sterrett were "showing clear discrimination against Al-Islam faith and East cell house."  (Doc. 12 at 26).  The grievance was denied emergency status by Wills on March 26, 2024, and on March 27, 2024, a counselor indicated "occasionally the facility is placed on level 2 lockdown per Warden as directed by the Deputy Director, due to staff shortages, which can cause chapel lines to be cancelled."  (Doc. 12 at 27).  The Defendants contend in their statement of material facts that the counselor's response was "reviewed by the Grievance Officer, who noted that this was an Administrative Decision, and the CAO concurred in the denial.  Plaintiff did

not appeal from the decision by the CAO." (Doc. 12 at ¶ 11(c)). The statement of material facts cites to the "Declaration of Michael Clemons" for the last proposition about the outcome of grievance K4-0324-1560, but Clemons' declaration was never filed in this litigation. There is no other evidence with the Defendants' brief to support the proposition that Plaintiff did not appeal grievance K4-0324-1560 to the ARB, nor is there any information about *when* the grievance was processed thru the grievance officer and CAO, or when the appeal to the ARB would have been due.

The defendants noted two other grievances about religious exercise--K4-0124-0467, K4-1024-5632. Grievance K4-0124-0467 complained that in January of 2024 East cell house residents were faced with choosing between attending Taleem and law library. Defendants indicate (without the supporting declaration from Michael Clemmons as discussed above) that this grievance was never appealed beyond the counselor's response. Grievance K4-1024-5632 was filed in October of 2024, months after this lawsuit.

## CONCLUSIONS OF LAW

### A. Legal Standards

Summary judgment is proper if there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a). In determining a summary judgment motion, the Court views the facts in the light most favorable to, and draws all reasonable inferences in favor of, the nonmoving party. *Apex Digital, Inc. v. Sears, Roebuck & Co.*, 735 F.3d 962, 965 (7th Cir. 2013) (citation omitted). Courts generally cannot resolve factual disputes on a motion for summary judgment. *See Tolan v. Cotton*, 572 U.S. 650, 656 (2014) ("[A] judge's function at summary judgment is

not to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial.") (internal quotation marks and citation omitted). However, when the motion for summary judgment pertains to a prisoner's failure to exhaust administrative remedies, the Seventh Circuit has instructed courts to conduct an evidentiary hearing and resolve contested issues of fact regarding a prisoner's efforts to exhaust. *Pavey v. Conley*, 544 F.3d 739, 742 (7th Cir. 2008).[1]  After hearing evidence, finding facts, and determining credibility, the court must decide whether to allow the claim to proceed or to dismiss it for failure to exhaust. *Wilborn v. Ealey*, 881 F.3d 998, 1004 (7th Cir. 2018).  The court is not required to conduct an evidentiary hearing if there is no genuine dispute of material fact, and the determination is purely legal. *See e.g.*, *Walker v. Harris*, 2021 WL 3287832 * 1 (S.D. Ill 2021); *Miller v. Wexford Health Source, Inc.*, 2017 WL 951399 *2 (S.D. Ill. 2017).

The Prison Litigation Reform Act (PLRA) provides that a prisoner may not bring a lawsuit about prison conditions unless and until he has exhausted all available administrative remedies. 42 U.S.C. § 1997e(a); *Pavey*, 544 F.3d at 740.  "The exhaustion requirement is an affirmative defense, which the defendants bear the burden of proving." *Pavey v. Conley*, 663 F.3d 899, 903 (7th Cir. 2011).  For a prisoner to properly exhaust his administrative remedies, the prisoner must "file complaints and appeals in the place, and at the time, the prison's administrative rules require." *Pozo v. McCaughtry*, 286 F.3d 1022,

---

[1]  The Supreme Court's recent opinion in *Perttu v. Richards*, 605 U.S. 460 (2025), held that if the facts necessary for a ruling on exhaustion are intertwined with the merits of the claim, a jury trial is required. But the *Perttu* Court did not go so far as to extend the Seventh Amendment right to a jury trial to all exhaustion disputes.  In this case, there is no intertwinement of the facts, so *Perttu* does not require that this issue be determined at a jury trial.

1025 (7th Cir. 2002). "[A] prisoner who does not properly take each step within the administrative process has failed to exhaust state remedies." *Id.* at 1024.

As an inmate in the IDOC, Plaintiff was required to follow the grievance process outlined in the Illinois Administrative Code. 20 ILL. ADMIN. CODE § 504.800, et seq. (2017). Section 504.810(c) requires that a grievance state: "what happened, when, where and the name of each person who is the subject of or who is otherwise involved in the complaint. This provision does not preclude an offender from filing a grievance when the names of individuals are not known, but the offender must include as much descriptive information about the individual as possible." An inmate may request that a grievance be handled as an emergency by forwarding it directly to the CAO. 20 ILL. ADMIN. CODE § 504.840. If it is determined that there exists a substantial risk of imminent personal injury or other serious or irreparable harm, the grievance is handled on an emergency basis, which allows for expedited processing of the grievance. *Id.*

If the inmate is not satisfied with the CAO's response, he can file an appeal with the IDOC Director through the Administrative Review Board (ARB). 20 ILL. ADMIN. CODE § 504.850(a). The ARB must receive the appeal within 30 days of the date of the CAO's decision. *Id.* The inmate must attach copies of the responses from the grievance officer and CAO to his appeal. *Id.* If an inmate is appealing a grievance that the CAO determined to be of an emergency nature, then the ARB shall expedite processing of the appeal. 20 ILL. ADMIN. CODE § 504.850(f). Section 504.870(a) provides that offenders can submit grievances directly to the ARB concerning protective custody placement, disciplinary proceedings at a facility other than the facility where the offender is currently

assigned, and all other issues about a facility other than the offender's current facility (except for personal property and medical issues).

### B. Analysis

Defendants argue that the grievance process was available, but Plaintiff did not exhaust his claims against them for a few reasons. First, they argue that grievance K4-1023-0544 was not sufficient to exhaust the claims against them because it did not name Defendants Wills or Sterrett and did not give the facility adequate notice that either individual had frustrated Plaintiff's ability to observe his religion. Second, the Defendants argue that grievance K4-0424-1828 again did not attribute conduct to Wills or Sterrett. Third, as to grievances K4-0324-1560 and K4-1024-5632, Defendants argue that Plaintiff did not appeal these grievances properly thru all steps of the grievance process. Fourth, as to grievance K4-0124-0647, Defendants argue that this January 2024 grievance was filed after the lawsuit was filed and thus violates the prohibition on an inmate suing before exhausting his remedies. In response, Plaintiff argues that he fully exhausted his remedies in this case by reference to grievance K4-1023-0544 because the appeal to the ARB should have been accepted as timely. (Doc. 16).

The Court will begin with grievance K4-1023-0544. Plaintiff argues that the grievance exhausted his claims, and that the ARB was wrong to reject it as untimely. By contrast, Defendants do not argue about timeliness and instead contend this grievance does not exhaust the claims in this case because it does not name Wills or Sterrett. Neither Plaintiff nor the Defendants bother to mention that this case contains three claims—a First

Amendment claim against Wills and Sterrett, an RLUIPA claim against Wills in official capacity, and an Equal Protection claim against Wills and Sterrett.

The Court agrees with Plaintiff's contention that the ARB **should not** have rejected grievance K4-1023-0544 as untimely.  Plaintiff clearly signed his name to mail the appeal on January 31, 2024, within 30 days of the CAO's ruling on January 2, 2024.  There is no evidence once Plaintiff signed and timely produced the appeal to prison staff that he had any control over how quickly it got to the ARB.  The Court will treat it as timely appealed; thus, the question becomes which of the three claims the grievance might exhaust. Defendants argue that it does not exhaust any claims because it does not name Wills and Sterrett, and Plaintiff seems to argue the grievance exhausts all claims.

While it is true that the grievance does not explicitly name Wills or Sterrett, it clearly and unequivocally complains that Plaintiff, a Muslim, was not being afforded regular religious ceremonies.  The Seventh Circuit does not zealously enforce IDOC's administrative rules that require a grievance to name all responsible individuals, instead emphasizing that the true purpose of a grievance is to alert a prison to a problem so that it can be addressed.  *See e.g.*, *Maddox v. Love,* 655 F.3d 709, 721-22 (7th Cir. 2011) (finding that a grievance about religious services that did not name the chaplain and warden was sufficient for exhaustion because it was addressed on the merits at all levels of review and the chaplain and warden were involved in the substantive response); *Glick v. Walker*, 385 Fed. App'x 579, 582-83 (7th Cir. 2010) (finding that two grievances that clearly described issues without employee names, and that were substantively assessed at each level of the grievance process, were sufficient for exhaustion because the PLRA does not

have a strict "name all defendants" mandate); *Williams v. Luking*, 2023 WL 317663 at * 5 (S.D. Ill. Jan. 19, 2023) (finding that an inmate's grievance that reasonably described deficient medical care, included a consultation of relevant medical professionals in the response process, and was exhausted at all levels, was sufficient for exhaustion even if it did not contain the names of prison officials).  Plaintiff's situation is on all fours with *Maddox v. Love,* because like Maddox, his grievance clearly complained about religious service access, something within the purview of a chaplain or administrator.  In response, the grievance officer conferred with Defendant Sterrett about the availability of religious offerings and learned that services were being cancelled by administrative decision due to understaffing.  Given that Wills was Warden, it is reasonable to assume that he was involved in the decision to cut services based on understaffing or for other administrative safety and security reasons.  As such, the Court finds that grievance K4-1023-0544 is sufficient to exhaust Claims 1 and 2 against Wills and Sterrett.

By contrast, nothing in grievance K4-1023-0544 suggests that Plaintiff notified prison officials at that time that other religions were receiving better treatment than his. Claim 3 asserts an Equal Protection violation based on differential treatment, so to exhaust this claim, Plaintiff must have a grievance on this issue.  Beyond grievance K4-1023-0544, in grievance K4-0324-1560, Plaintiff clearly alleged that observers of other faiths had better access to their religious practice during lockdowns than Muslims because they had alternative methods of observance, including multiple television channels.  Defendants contend that this grievance was appealed at all levels internal to the prison, but that it was not appealed to the ARB.  They do not give dates when prison-

level exhaustion was completed.  The burden to demonstrate a failure to exhaust remedies lies with the Defendants.

The statement of material facts to Michael Clemmons and Sara Quick, but their declarations were never filed with the Court.  (Doc. 12 at ¶ 11(b)).  Without properly supporting the Motion for Summary Judgment with the declarations that they cited, summary judgment cannot be granted in the Defendants' favor.  However, Plaintiff did not challenge the Defendants' assertion that grievance K4-0324-1560 was not appealed to the ARB, nor did he argue that this grievance exhausted Claim 3.  On the available evidence provided by the parties, the Court simply cannot tell what came of grievance K4-0324-1560.  The burden for demonstrating exhaustion lies with the Defendants, so with no further evidence or argument from the parties, the Court finds by default that Claim 3 was exhausted.

In addition to failing to attach or ever tender the declarations of Michael Clemmons and Sara Quick, counsel also made an argument in the Motion for Summary Judgment based on an erroneous reading of the record.  Counsel specifically argued that grievance K4-0124-0467 (filed in January of 2024) cannot be considered for exhaustion purposes because it was filed *after* this lawsuit was commenced.  (Doc. 12 at 13).  This argument is incorrect.  The complaint in this case was filed on June 6, 2024 (Case No. 24-cv-1462, Doc. 1), and Plaintiff Ford submitted his signed copy of the complaint on August 5, 2024.  Clearly, a grievance filed in January of 2024 was filed well before the complaint filed in June or August of 2024.

Based on the foregoing analysis, Defendants' Motion for Summary Judgment on the issue of exhaustion will be denied in full. All three claims against both defendants will proceed to merits discovery.

### DISPOSITION

Defendants' Motion for an Extension to File the Motion for Summary Judgment (Doc. 11) is **GRANTED** instanter, the Motion was considered as timely filed, and Plaintiff responded.  Plaintiff's Motion for Status (Doc. 13) is **GRANTED** by the issuance of this Order.  Defendants' Motion for Summary Judgment (Doc. 12) on the issue of exhaustion of administrative remedies is **DENIED** in full.  Claims 1-3 may proceed against Defendants Wills and Sterrett.  A merits scheduling order shall follow by separate order.

**IT IS SO ORDERED.**

Dated: March 19, 2026

_____
DAVID W. DUGAN
United States District Judge